[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married in Chicago, Illinois on June 11, 1960. There have been two children issue of the marriage, both of whom have reached their majority. The son is thirty years of age and lives in California. The daughter is thirty-one years of age and is a podiatrist in Virginia. The plaintiff is seventy years of age and the defendant is seventy-five years of age. The defendant retired and receives a small pension from Sikorsky where he worked last for a period of approximately ten years.
At the time of their marriage, the plaintiff owned and operated her own beauty shop in Chicago. Shortly after the marriage, the parties moved to Bridgeport and stayed in the defendant's mother's home. Two years later they purchased their home for $27,500.00, each contributing half of the proceeds and $3,000.00 from their parents of which $1,000.00 was paid back. Over the years, the plaintiff has cared for the home, mowing the grass, shoveling the snow, and doing the repairs or causing them to be done. The defendant did nothing so far as care or upkeep of the house.
In 1988 the plaintiff's mother came to live with them and she provided money for an addition. Sixty thousand dollars was provided by the plaintiff's mother. The mother stayed in 1988 and 1989 and died in 1989. Following her mother's death, the plaintiff sold her mother's home in Florida for $59,000.00 and paid off the children's student loans. The Certificate of Deposit at the First Federal Bank in the amount of $5,000.00 shown on the plaintiff's financial affidavit is what is left of her inheritance.
At the beginning of the marriage the plaintiff tried to get a hair dresser's license. The defendant, however, did not want her to be a hairdresser. She took a course to be a media aide, but the defendant did not want her to do that. He said she was not to work. She did, however, work at the Stop 
Shop for a period of time and has taken care of an elderly woman for fifteen to twenty years. She earned anywhere from $5,000.00 to $9,000.00 per year. The lady for whom she worked just recently died at the age of 95.
The plaintiff's health is good, but she does have high blood pressure, has had an ulcer and states she has "constant hives." The parties have traveled to Russia twice and to Europe CT Page 7568 together once. The defendant has gone to Europe by himself and to the Orient.
The defendant has worked as a quality control inspector. He is a high school graduate but has recently pursued a college degree as subsequently noted herein. He was drafted in 1940 and served five years in the U.S. Army Infantry in the European Theater of Operations. Upon his discharge in 1945, he worked for a few years, traveled, decided to go to California and stopped off in Chicago where he met the plaintiff. He thought the job market was better in Bridgeport so they came to Bridgeport shortly after their marriage. The plaintiff testified the defendant had 29 different jobs which the defendant did not dispute. He described his employers as "fringe outfits with small contracts." The last nine or ten years before retirement he worked for Sikorsky.
The defendant presently is taking courses at Southern Connecticut. He has been attending part time for four years. He will graduate in June of next year with a B.S. degree. He has 115 credits and needs but 5 more credits to receive his degree. He is extremely active, riding his bicycle 15 to 18 miles three times each week. He plays golf three times each week. He testified he is being treated for a thyroid condition and has had some loss of continence. He is hearing impaired.
The marriage of the parties has broken down irretrievably. There have been difficulties for many years, and the plaintiff had filed for dissolution of the marriage on two previous occasions. On both prior occasions, the defendant had promised to change and to "be better." The defendant has been overly critical of the plaintiff, has called her names and has slapped her once and pushed her. The plaintiff complains that he sits in the house in his boxer shorts and is of no help around the house. The court finds that he is at fault for the breakdown of the marriage.
The parties are in disagreement on division of their property and on the issue of alimony. The marital home has been appraised for $200,000.00. (See defendant's exhibit 1.) The plaintiff desires to keep the house and buy out the defendant's equity. The plaintiff claims that she has contributed to repairs and improvements since 1988 of $66,089.00 (see list of repairs and improvements since 1988 submitted by the plaintiff) and requests that the sum of $65,000.00 and the costs of sale of CT Page 7569 $15,000.00 be deducted from the $200,000.00 to determine the defendant's equitable share. The plaintiff indicates a willingness to pay $60,000.00 for the defendant's net equity computed in this fashion.
The defendant, however, argues that the additions and repairs have added $37,000.00 to the value of the house and that this amount should be deducted from the overall value rather than the $65,000.00 figure advocated by the plaintiff. The court finds a figure of $37,000.00 should be deducted from the fair market value of the home (see defendant's exhibit 1, page 5, concluding paragraph). The court also finds a fair figure for costs of sale to be $12,500.00. A fair figure for purchase of the defendant's equity is $75,000.00.
The First Federal Bank certificate of deposit noted in the plaintiff's financial affidavit as $5,000.00 is the balance of the plaintiff's inheritance from her mother. The same account is listed in the defendant's financial affidavit as $7,195.00. The figure of $7,195.00 is more accurate than the $5,000.00 figure noted by the defendant. The People's Bank savings account noted on the defendant's financial affidavit in the amount of $3,820.17 may be $2,000.00 more than that now.
This account represents the balance of funds received by the defendant as the result of an accident. The shares of NICOR stock shown on the plaintiff's financial affidavit were hers prior to the marriage.
In the recent case of Blake v. Blake, 207 Conn. 217 at 230 (1988), our Supreme Court cited with approval the language of O'Neill v. O'Neill, 13 Conn. App. 300 at 311 (1988), in which our Appellate Court stated as follows:
 A property division out to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should CT Page 7570 take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities. See also Watson v. Watson, 221 Conn. 698, 712 (1992).
In determining the proper orders in this case the court must consider the factors set forth in 46b-81 and 46b-82
of the General Statutes. With respect to alimony and a division of property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530
(1980); Watson v. Watson, 221 Conn. 698, 710
(1992).
The court has considered all of the criteria of46b-81 and 46b-82 of the General Statutes together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," CT Page 7571 Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982).
Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5
(1985), and that the court need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307, 313-14 (1991).
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. The defendant is at fault for the breakdown of the marriage.
The court enters the following orders:
1. A decree of dissolution of the parties' marriage shall enter on the ground of irretrievable breakdown of the marriage.
2. The shares of NICOR stock and the Putnam Mutual Fund and the Gateway Bank accounts shall be wholly the plaintiff's free of any claim by the defendant.
3. The First Federal savings account shown on the defendant's financial affidavit in the amount of $7,195.00 shall be wholly the plaintiff's free of any claim or demand of the defendant.
4. The People's Bank IRA and the People's Bank savings account, which now may be $2,000.00 more, shown on the defendant's financial affidavit shall be the property of the defendant free of any claim or demand by the plaintiff. CT Page 7572
5. The joint account at First Federal Savings Bank shall be divided equally between the parties, which division shall be accomplished within one week of the date hereof unless penalty is to be incurred; in which case it shall be divided at such time as no penalty shall be incurred.
6. The plaintiff shall retain the 1989 Dodge Omni which shall be hers free of any claim or demand by the defendant, and the defendant shall retain his 1988 Mazda free of any claim or demand by the plaintiff.
7. The defendant shall transfer ownership to the Connecticut General Life Insurance policy upon his life to the plaintiff. The plaintiff shall continue to pay the premiums thereon.
8. The plaintiff shall retain the contents of the marital home, except for the following items which shall be the property of the defendant:
a. All of the defendant's personal property.
b. His clothes.
c. His bedroom set.
d. The dresser in Laura's room.
e. Two (2) chairs from the kitchen.
f. End table in the basement.
g. Those things in the home from his side of the family.
h. Anything he purchased during the marriage.
 i. Dishes, kitchen utensils, pots, pans, china and silverware suitable for set up of a kitchen for the defendant. Small kitchen appliances shall be divided.
 j. Sheets, towels, blankets, pillows and linens with which the defendant can set up housekeeping.
 Should there be any disagreement between the parties on a division of tangible personal property, they are referred CT Page 7573 to family relations for resolution of such disputes or differences. In the event the parties are still in disagreement, they shall return to court for further orders.
9. Until the defendant vacates the property at 179 Lucille Street in Fairfield, he shall contribute $500.00 per month towards its expenses. The defendant shall vacate said property on or before September 6, 1993.
10. Upon the defendant's vacating the property at 179 Lucille Street, Fairfield, he shall pay alimony to the plaintiff in an amount of $315.00 per month terminable upon the earlier to occur of the following events: the death of either of the parties or the plaintiff's remarriage.
11. The plaintiff shall have the option of purchasing the defendant's interest in the real property at 179 Lucille Street in Fairfield, Connecticut, for $75,000.00. Notice in writing of the exercise of this option shall be given to the defendant within thirty (30) days of the date hereof. Exercise of the option shall be within sixty (60) days of the date hereof.
 The plaintiff may exercise this option by payment in cash of $60,000.00 and delivery of a promissory note in customary Connecticut form for $15,000.00 secured by a mortgage in said amount with interest at six (6%) per cent per annum, said mortgage note to be due and payable in eighteen: (18) months following exercise of the option.
 In the event the plaintiff chooses not to exercise the option, the property shall be placed immediately upon the market for sale at a listing price of $200,000.00. Until the property is sold, the plaintiff shall have exclusive possession of the same upon the defendant's vacating of the same, and she shall be wholly responsible for the real property taxes and homeowners' insurance and any ordinary repairs. Any extraordinary repairs defined as any single repair in excess of $100.00 shall be split equally by the parties.
 Upon a sale of the property, the first $40,000.00 of the sales proceeds shall be the plaintiff's. The remaining proceeds of sale after payment of the brokerage commission, CT Page 7574 reasonable attorney's fees upon the sale, conveyance taxes and customary closing adjustments shall be split equally between the parties. Any dispute regarding the terms or conditions of sale shall be referred to the court for further determination.
12. Each party shall be responsible for his or her own liabilities and shall indemnify and hold harmless the other party from any claim or demand thereon. Each party shall, however, be responsible for one half of the $728.00 property taxes owed regardless of whether or not the plaintiff exercises the option to purchase.
13. Each party shall pay her or his own attorney's fees.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE